Filed 6/30/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>            v.<br><br>QUINDALE DAVID POWELL,<br><br>    Defendant and Appellant. | A170473<br><br>(San Mateo County<br>Super. Ct. No. SC061488A) |

    Defendant Quindale Powell was convicted of murder in 2008. In 2009, he was sentenced to a term of 50 years to life in prison. In 2024, the trial court, in response to a motion filed by Powell, modified by two days the number of presentence custody credits that had been awarded to Powell at his 2009 sentencing, but otherwise declined to disturb the sentence.

    Powell appeals the order, contending in part that, upon making this correction, the court should have conducted a full resentencing, including applying ameliorative legislation that took effect after Powell's conviction became final. The Attorney General counters that the trial court lacked jurisdiction to correct Powell's credits or to conduct a full resentencing, although the Attorney General agrees Powell's credits were incorrectly calculated and should be corrected by this court.

    We do not adopt either party's position in full. We conclude the trial court had jurisdiction to correct the computation of Powell's credits as part of its inherent authority to correct clerical errors. But this correction does not

entitle Powell to a full resentencing, because his judgment remains final. We will direct that three days of credit be added rather than two (as we agree with the Attorney General's calculations on that point), and we will affirm the trial court's order as modified.

## I. BACKGROUND

### A. *Powell's Convictions and Sentence*

We outlined the facts underlying Powell's convictions in our prior unpublished opinion, *People v. Powell* (Feb. 22, 2012, A124914) [nonpub. opn.].

In May 2008, a jury convicted Powell of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and being a felon in possession of a firearm (former § 12021, subd. (a), now § 29800, subd. (a)(1); count 2). As to the count 1 murder charge, the jury found true an allegation that Powell personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)).

In March 2009, the trial court sentenced Powell to an aggregate prison term of 50 years to life, consisting of 25 years to life for the count 1 murder conviction, plus 25 years to life for the section 12022.53, subdivision (d) firearm use enhancement. The court imposed a three-year term for count 2 (unlawful firearm possession). The court orally stated that term would run concurrently with the count 1 sentence, but the minute order and abstract of judgment state the terms would run consecutively.

As to credits, the court awarded 1,076 days of actual time served in local custody, with no additional time for local conduct credit. The court orally stated this credit total at sentencing, and it was reflected in the minute order and the abstract of judgment.

---

[1] Undesignated statutory references are to the Penal Code.

2

This court affirmed the judgment in an opinion filed on February 22, 2012. (*People v. Powell, supra,* A124914.) The California Supreme Court denied review on May 9, 2012. This court issued its remittitur on May 16, 2012.

B. *Resentencing Proceedings*

Between February 2023 and October 2023, Powell, proceeding in propria persona, filed several motions asking the trial court to (1) correct his award of presentence custody credits, (2) resentence him under "all new applicable changes in law," and (3) award additional custody credit after resentencing. At some point, counsel was appointed for Powell in this matter, and in January 2024, counsel filed a motion asking the trial court to correct the credits and fully resentence Powell.

After receiving briefing and hearing argument, the trial court on March 29, 2024 ordered the correction of Powell's presentence custody credits, concluding the correct total is 1,078 days, rather than the 1,076 days awarded at sentencing in March 2009. The court rejected Powell's argument that this credit change entitled him to a full resentencing or to the application of ameliorative statutory changes that have been enacted since the 2009 sentencing.

The court entered amended abstracts of judgment (for the determinate and indeterminate portions of Powell's sentence), reflecting (1) Powell had 1,078 days of presentence custody credit, and (2) the three-year determinate sentence on count 2 is to run concurrently with the 50-years-to-life indeterminate sentence on count 1. The court ordered the latter correction on its own motion after having noticed the discrepancy in the trial record between the trial judge's oral pronouncement that the count 2 term would be concurrent and the incorrect statement on the abstract of judgment that the term would be consecutive.

Powell appealed.

## II. DISCUSSION

### A. *The Calculation of Powell's Presentence Credits*

As noted, at sentencing on March 6, 2009, the trial court stated Powell was entitled to 1,076 days of credit for actual time served in local custody, with no additional time for local conduct credit. This total was reflected in the minute order and the abstract of judgment.

At the March 29, 2024 hearing on Powell's motion to correct the credits, the trial court found the correct total was 1,078 days. The court stated that, according to the 2009 probation report, Powell was arrested on March 6, 2006 and was released on the present case on March 8, 2006, entitling him to three days of credit. Powell was then rearrested on March 27, 2006, and remained in custody until the March 6, 2009 sentencing hearing, a period that the court calculated as 1,075 days, resulting in total credits of 1,078 days.

In his appellate brief, the Attorney General states the correct total is 1,079 days, because the date of the March 6, 2009 sentencing hearing should be included in the total. (*People v. Morgain* (2009) 177 Cal.App.4th 454, 469 ["A defendant is entitled to credit for the date of his arrest and the date of sentencing."].) Powell does not take issue with this calculation. Nor do we.

### B. *The Parties' Arguments*

Powell contends the trial court's March 29, 2024 order correcting his presentence custody credits had the effect of vacating the judgment and rendering his sentence nonfinal. As a result, Powell argues, the court should have undertaken a full resentencing, including considering ameliorative statutory amendments that have been enacted since the 2009 sentencing.

In response, the Attorney General argues the trial court lacked fundamental jurisdiction to modify Powell's credits or to hold a full

4

resentencing hearing, because the judgment in Powell's case "was long final." The Attorney General agrees the credit total should be corrected from the originally calculated 1,076 days to 1,079 days, but he argues this court should make the modification by treating Powell's appeal as a petition for a writ of habeas corpus.

We do not agree fully with either party's position. We conclude the trial court had jurisdiction to correct the credit total to 1,078 days under its inherent authority to rectify clerical error (and we now complete the correction in this appeal by increasing the total to 1,079 days in accord with the position taken by the Attorney General). But this correction does not entitle Powell to a full resentencing.

## C. *Correction of Powell's Credits Was Proper and Did Not Entitle Him to a Full Resentencing*

"Under the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*People v. Karaman* (1992) 4 Cal.4th 335, 344 (*Karaman*).) There are exceptions to this rule. A court has jurisdiction to modify a sentence where authorized by statute or where jurisdiction is conferred by the filing of a petition for a writ of habeas corpus. (*People v. Taft* (2026) 119 Cal.App.5th 380, 387.)

In addition, as relevant here, a court has inherent authority to correct a clerical error at any time. (*In re Candelario* (1970) 3 Cal.3d 702, 705 (*Candelario*); *People v. Sanchez* (2026) 119 Cal.App.5th 1060, 1064 (*Sanchez*).) This power " 'exists independently of statute and may be exercised in criminal as well as in civil cases.' " (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) When the court corrects a clerical error, "the full resentencing rule does not apply because the case remains final." (*Sanchez*, at p. 1064; accord, *People v. Humphrey* (2020) 44 Cal.App.5th 371, 380.)

As to when the power to correct clerical error applies, our Supreme Court stated in *Candelario*: "Clerical error . . . is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' [Citation.] Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted. (*In re Wimbs* (1966) 65 Cal.2d 490, 498.) [¶] An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*Candelario*, *supra*, 3 Cal.3d at p. 705.)

In *People v. Jack* (1989) 213 Cal.App.3d 913, 917–918 (*Jack*), a panel in this Division held that, based on the inherent authority to correct clerical errors, the trial court there had jurisdiction to correct a miscalculation in the number of credits awarded to the defendant. In reaching this conclusion, we noted the distinction "between clerical error which can be corrected by amendment and judicial error which can only be corrected by appropriate statutory procedure." (*Jack*, at p. 915.) We stated: "Generally, a clerical error is one inadvertently made, while a judicial error is one made advertently in the exercise of judgment or discretion. [Citations.] Clerical error can be made by a clerk, by counsel, or by the court itself." (*Ibid.*, citing *People v. Schultz* (1965) 238 Cal.App.2d 804, 808 [judge misspoke].)

In *Jack*, we stated that, "The distinction between judicial errors which may not be corrected and clerical errors which may be remedied has been made to prevent a trial court from attempting to revise ' "its deliberately exercised judicial *discretion*." ' ([*Candelario*], *supra*, 3 Cal.3d at p. 705.) The

law permits an amendment if the record clearly demonstrates that the error was not the result of an exercise of judicial discretion." (*Jack*, *supra*, 213 Cal.App.3d at p. 917.)  Because a trial court does not exercise discretion in determining the number of days a defendant spent in presentence custody, its error in calculating that number is a clerical error that can be corrected whenever the error is brought to the court's attention.  (*Ibid.*; see *People v. Humphrey, supra,* 44 Cal.App.5th at p. 379 [stating a trial court's power to correct clerical errors includes jurisdiction to amend judgment "to correct its original, erroneous calculation of his presentence credits"].)

In *Jack*, we concluded by stating, "We are mindful of the admonition, contained in several cases, against characterizing a judicial error as a clerical error and thus creating jurisdiction to amend when none exists. [Citations.]  Having examined the underpinnings of this distinction, we are satisfied that our ruling will not violate the spirit of this caveat.  In Jack's case, the sentencing court properly corrected its original, admittedly erroneous calculation of presentence credits." (*Jack*, *supra*, 213 Cal.App.3d at pp. 917–918.)

Other decisions support the view that an inadvertent act by a court may be correctable as a clerical error.  (See *Sanchez*, *supra*, 119 Cal.App.5th at p. 1065 ["a simple math error occurred when either the court or the clerk failed to distinguish between time imposed on felonies (to be served in state prison) and time imposed on misdemeanors (to be served in county jail), in stating the total time imposed to be served in state prison"; error in resulting abstract of judgment was correctable clerical error]; *People v. Menius* (1994) 25 Cal.App.4th 1290, 1294–1295 [judge misspoke when referring to wrong subdivision of enhancement statute; "inadvertence, though committed by the judge," is clerical error that may be corrected at any time]; see also *People v.*

7

*Schultz, supra,* 238 Cal.App.2d at pp. 807–808 [in oral findings after bench trial, judge misspoke as to count of conviction].)

As the Attorney General notes, the appellate court in *People v. Boyd* (2024) 103 Cal.App.5th 56, 63–64 (*Boyd*) declined to follow *Jack*, and held that if a trial court states an erroneous credit total when orally pronouncing judgment, that is a judicial error rather than a clerical error, and a trial court has no inherent authority to correct it after the judgment is final. For this conclusion, the *Boyd* court relied on the statement in *Candelario* that the difference between judicial and clerical error is " ' "whether the error was made in rendering the judgment, or in recording the judgment rendered" ' " (*Boyd*, at p. 64, citing *Candelario, supra*, 3 Cal.3d at p. 705), and the statement in *Karaman* that, " '[i]n a criminal case, judgment is rendered when the trial court orally pronounces sentence' " (*Boyd*, at p. 63, citing *Karaman, supra*, 4 Cal.4th at p. 344, fn. 9). The trial court in *Boyd* stated an incorrect credit total when it orally pronounced the sentence, so in the appellate court's view, the error was judicial, not clerical. (*Boyd*, at p. 63.) The trial court therefore lacked jurisdiction to correct the error via a freestanding motion, although the appellate court made the same correction by treating the defendant's appeal as a petition for a writ of habeas corpus. (*Id.* at pp. 71–72.)

As we have noted above, and as the *Boyd* court acknowledged (*Boyd, supra*, 103 Cal.App.5th at p. 64), the California Supreme Court has stated judicial error involves the exercise of judicial discretion. (*Karaman, supra*, 4 Cal.4th at p. 345, fn. 11 ["It is clear that both the initial judgment rendered by the court and the subsequent modification were the result of the exercise of judicial discretion, and that any error the court sought to remedy thus was judicial rather than clerical in nature."]; *Candelario, supra*, 3 Cal.3d at

p. 705; *In re Wimbs, supra,* 65 Cal.2d at p. 498 [a sentencing court's purported correction of a judgment to order concurrent sentences after it had ordered consecutive ones "was not of merely clerical error or inadvertence but an attempt, in excess of the court's power, to revise its deliberately exercised judicial discretion"].)

The *Boyd* court, however, noted the statement in *Candelario* drawing a distinction between rendering and recording judgments, and based on that, concluded that "whether discretion was exercised in pronouncing sentence does *not* distinguish clerical error from judicial error." (*Boyd, supra,* 103 Cal.App.5th at p. 64, italics added.) In the *Boyd* court's view, the references to discretion in *Candelario* and the other cases cited above (cases that involved judicial errors made during the pronouncement of judgment) "are best read to identify the judicial process of determining the sentence, even if governed by mathematical rules (such as for calculating credits) rather than qualitative ones." (*Boyd,* at p. 64.)

Other courts have adopted the *Boyd* court's view or reached similar conclusions. (See *People v. Singleton* (2025) 113 Cal.App.5th 783, 792 [stating error in calculating credits is judicial error, not clerical error]; *People v. Taft, supra,* 119 Cal.App.5th at p. 387 [same]; *People v. Gonzalez* (2025) 108 Cal.App.5th 741, 748 [same], review granted, Apr. 30, 2025, S289874; see also *Gonzalez v. Sherman* (9th Cir. 2017) 873 F.3d 763, 772 [cited by Powell; federal court states a "miscalculation" of credits differs from a "scrivener's error" (i.e., a discrepancy between the oral pronouncement of judgment and the court's written records); correction of a miscalculation results in a "new judgment" for purposes of federal habeas corpus rules governing successive petitions, while correction of a "scrivener's error" does not].)

9

*Boyd* does not persuade us that the approach we took in *Jack* was erroneous, and we decline to hold that a trial court's math error in calculating credits (or other inadvertent mistake such as a misstatement during an oral ruling) cannot be considered correctable clerical error. The *Boyd* court is, of course, correct that the Supreme Court stated in *Candelario* that the distinction between clerical error and judicial error is whether the error occurred in rendering or recording the judgment (*Candelario, supra,* 3 Cal.3d at p. 705; see *Boyd, supra,* 103 Cal.App.5th at p. 64), but the Supreme Court also emphasized the importance of whether the original error involved the exercise of judicial discretion (*Candelario,* at p. 705; see *Boyd,* at p. 64).

To the extent there is ambiguity in these statements, we are not persuaded that the appropriate way to resolve it is by reading "the exercise of judicial discretion" (*Candelario, supra,* 3 Cal.3d at p. 705) as a category that encompasses computational or inadvertent errors made by a court. As we noted in *Jack,* the purpose of the distinction drawn between clerical and judicial errors is "to prevent a trial court from attempting to revise ' "its deliberately exercised judicial *discretion*." ' ([*Candelario*], *supra,* 3 Cal.3d at p. 705.)" (*Jack,* 213 Cal.App.3d at p. 917.) That purpose is not served by treating a trial court's computational error in awarding credits (a three-day error in this case) as beyond the reach of the court's authority to correct clerical errors. Pending further guidance from our Supreme Court, we will adhere to our conclusion in *Jack* that error of this type is clerical error that a court has inherent authority to correct.

Because we conclude the credit calculation error here was clerical error that the trial court had inherent power to correct, we need not address the parties' arguments as to the potential applicability of other bases for

jurisdiction, such as section 1237.1, section 1172.1, or the unauthorized sentence doctrine. (See § 1237.1 [no appeal of credit errors unless first raised in trial court; trial court "retains jurisdiction" to correct credit errors "after a notice of appeal has been filed"]; § 1172.1, subd. (a)(1) [trial court may resentence a defendant under certain circumstances, on its own motion or on the recommendation of specified correctional and law enforcement officials]; *People v. Singleton, supra,* 113 Cal.App.5th at p. 787 ["The appellate courts are divided as to whether, in the absence of a specific authorizing statute, a superior court has jurisdiction to correct an unauthorized sentence once the judgment is final."].)

In addition, as noted, the correction of a clerical error does not trigger a full resentencing because the case remains final. (*Sanchez, supra*, 119 Cal.App.5th at p. 1064; *People v. Humphrey, supra,* 44 Cal.App.5th at p. 380.) We therefore need not address the parties' arguments as to (1) whether other types of court action render a sentence nonfinal and subject to the application of ameliorative statutory amendments, or (2) whether the trial court here erred in stating how it would rule *if* one such ameliorative enactment applied. For example, as to the potential applicability of ameliorative laws in habeas corpus proceedings, the parties note the California Supreme Court has granted review on the following issue: "Does the issuance of an order to show cause to review one aspect of a defendant's sentence in habeas corpus proceedings render applicable all ameliorative laws taking effect after the defendant's judgment became final?" (*People v. Esquivias* (2024) 103 Cal.App.5th 969, review granted Oct. 2, 2024, S286371, argued May 20, 2026.) No similar question is presented here.

11

**D.** *There Is No Basis for a More Extensive Recalculation of Credits*

Finally, Powell contends that, under section 2900.1, his presentence credits should be recalculated to include all the time between his March 6, 2009 sentencing and the March 29, 2024 hearing where the trial court made the two-day revision to his credits. We disagree.

Section 2900.1 states: "Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." Under this statute, "[w]hen . . . an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual time* the defendant has already served and credit that time against the 'subsequent sentence.'" (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.) Similar principles may apply in other resentencing contexts. (E.g., *People v. Saibu* (2011) 191 Cal.App.4th 1005, 1012 [*Buckhalter* principle "would appear to apply" when a court resentences a defendant to a single aggregate term under Cal. Rules of Court, rule 4.452].)

Powell has cited no authority suggesting such a recalculation is required in the different circumstances presented here. We decline to hold that, when a court corrects a minor computational error in the defendant's presentence credits, it cannot stop there but must also include all the time up to the date of the recalculation.

### III. DISPOSITION

The trial court is directed to prepare modified abstracts of judgment reflecting Powell had accrued 1,079 presentence custody credits as of the time of his March 6, 2009 sentencing. The trial court shall forward copies of the amended abstracts of judgment to the Department of Corrections and

12

Rehabilitation.  In all other respects, the trial court's March 29, 2024 order, including its correction of the abstracts of judgment to reflect concurrent sentences on counts 1 and 2, is affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
SWEET, J.[*]

---

[*] Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:      Superior Court of California, County of San Mateo

Trial Judge:      Hon. Amarra A. Lee

Counsel:          Kyle Gee, under appointment by the Court of Appeal, for
                  Defendant and Appellant.

                  Rob Bonta, Attorney General, Charles C. Ragland, Chief
                  Assistant Attorney General, Jeffrey M. Laurence,
                  Assistant Attorney General, Amit Kurlekar and Victoria
                  Ratnikova, Deputy Attorneys General for Plaintiff and
                  Respondent.